IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| UNITED STATES OF AMERCA, | ORDER |
| Plaintiff, | Case No. 10-cr-85-wmc |
| v. | |
| ROMAILL COX, | |
| Defendant. | |

---

On August 31, 2010, defendant Romail Cox entered a plea to count 1 of the indictment charging him with "knowingly and intentionally possess[ing] with intent to distribute 50 grams or more of a mixture or substance containing crack base (crack cocaine), on or before January 16, 2010, in "violation of Title 21, United States Code, Section 841(a)(1)." This plea was entered pursuant to a written agreement between the defendant and the United States dated August 2, 2010, only one day before the enactment and effective date of the Fair Sentencing Act of 2010 and Cox did not sign the agreement until August 12, 2010. The purpose of this order is to memorialize the basis for the court's oral ruling at the time of sentencing that Cox was entitled to application of the FSA's lower mandatory minimum sentence of 5 years.

Were Cox's sentence solely based on the date of the offense, there is no dispute that he would be subject to a 10-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(iii) (2009). Indeed, the defendant acknowledged the offense to which he pled carried a mandatory minimum term of imprisonment of 10 years in his written plea agreement and in open court at his plea hearing. As noted in extensive briefing by

1

defendant's counsel, however, the FSA was enacted almost a month before Cox's plea and, among other things, reduced the mandatory minimum applicable to the sale of the quantity of drugs applicable here (246 grams of crack cocaine) to "not less than 5" years. 21 U.S.C. § 841(b)(1)(B)(iii) (2010). As a result, defendant argues he should be entitled to the benefit of this lower mandatory minimum.

As the court stated at the time of sentencing, defendant Romaill Cox amassed a substantial array of criminal offenses for someone only 27 years of age, leaving the court with no other conclusion than he has chosen crime as his profession, particularly dealing drugs. This is confirmed by his lack of any legitimate employment, other than a short-term job in 2005.

As a result, the defendant's advisory guideline imprisonment range was 130 to 162 months, above even a 10-year mandatory minimum sentence. Pursuant to §5H1.1 of the Advisory Sentencing Guidelines and 18 U.S.C. §3553(a), however, this court determined that an 8-year sentence was called for, concluding that the defendant (1) is still a young man, (2) indicated at least some recognition of the error of his ways, which may now be further reinforced by a lengthy prison term far exceeding any he has served to date, and (3) lacked any indication of violent tendencies for at least ten years. For this reason, it is necessary that the court decide whether an even higher mandatory minimum sentence must be imposed instead.

All circuits to date, including the Seventh Circuit, in *United States v. Bell*, 624 F.3d 803 (7th Cir. 2010), have concluded that the general Federal Saving Statute, 1 U.S.C. §

109, operates to bar the retroactive application of the FSA. *See Id.* at 814-15. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 900 n.7 (8th Cir. 2010); *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010); *United States v. Glover*, 2010 WL 4250060, *2 (2d Cir. October 27, 2010) (unpublished).

In its' brief, the United States of America maintains that the *Bell* decision controls here as well. Defendant Cox, on the other hand, argues that because he had not yet been sentenced at the time of the FSA's enactment, indeed had not yet entered a plea of guilty by that date, then the outcome should be different from *Bell*. No circuit court has yet weighed in on this factual distinction, though defendant cites a growing list of district courts around the country finding that the new, reduced mandatory minimum for crack cocaine should be applicable to any defendant sentenced after the enactment date of the FSA. *See, e.g., United States v. Johnson*, 08-cr-270-Orl-31 KRS (M.D. FL Jan. 4, 2011) (Presnell, J.); *United States v. Favors*, 1:10-cr-384-LY-1, Doc. No. 34 (W.D. TX Nov. 23, 2010) *Yeakel, J.); *United States v. Johnson*, 3:10-CR-138, Doc. No. 26 (E.D. Va Dec. 7, 2010) (Payne, J.); *United States v. Douglas*, 2010 WL 4260221 (D. Me Oct. 27, 2010) (Hornby, J.); *United States v. Angelo*, 1:10-cr-10004-RWZ (D. Ma Oct. 29, 2010) (Zobel, J.); *United States v. Shelby*, 2:09-cr-0379-CJB Doc. No. 49 (E.D. La Nov. 10, 2010) (Barbee, J.); *United States v. Roscoe*, 1:10-cr-126-JTN (W.D. MI) (Neff, J.); *United States v. Whitfield*; 2:10-cr-13 (N.D. MS December 21, 2010) (Mills, C.J.)

Despite this growing, persuasive authority in favor of applying the FSA's reduced

mandatory minimums to defendants awaiting sentencing for crack cocaine violations,[1] the United States Attorney General has continued to maintain that those awaiting sentence for offending conduct predating the FSA's enactment date are subject to these higher mandatory minimums. Here, in particular, the government maintains that the Seventh Circuit's decision in *Bell* already rejected the reasons for retroactive application of the FSA advanced by defendant, as well as by those district courts who have found that the FSA's lower mandatory minimum sentences should apply to offenders whose conduct predated the Act, but who were sentenced after its enactment. To a substantial extent, this court agrees with the government. Certainly, the Seventh Circuit has rejected the various characterizations of the FSA as "redefining" conduct or being "curative" or "remedial." *Bell* at 814-15.

Where this court parts company with the government is in its' assertion that *Bell* has rejected the possibility that the FSA by its terms applies retroactively to offenders not yet sentenced. Predicting how the Seventh Circuit and potentially the Supreme Court will ultimately come out on this question is admittedly difficult. But it is no great stretch to find Congress's statements about the urgent need to remedy an unfair sentencing scheme between powder and crack cocaine offenses as a sufficient expression of intent to apply the FSA to those offenders who both enter a plea and are sentenced after its enactment.

---

[1] Indeed, at sentencing the government's counsel conceded no district court has to date ruled the higher mandatory minimums apply, though in fairness other district courts appear to have continued imposing pre-FSA mandatory minimums post-enactment,

Indeed, *Bell* does not even discuss the core argument of the defendant or other district courts: Congress's overwhelming, non-partisan intent to remedy disparities in sentencing between powder cocaine and crack cocaine establish its intent to apply the FSA's mandatory minimums to those awaiting sentencing for crack cocaine offenses. While the *Bell* court implicitly rejected this argument with respect to those already sentenced by district courts at the time of enactment, this court is persuaded that the structure, language and context of the FSA is sufficiently strong to find Congress intended for the reduced mandatory minimum sentencing provisions to be applied to offenders yet to be sentenced.

Congress's intent can be best discerned in the FSA's express directive that:

> The United States Sentencing Commission shall (1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. 994 note), as though the authority under that Act had not expired; and (2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guidelines provisions and applicable law.

Pub. L. No 111-120, 124 Stat. 2372 (Aug. 3, 2010)

The urgency to amend the sentencing guidelines "as soon as practicable" is consistent with the FSA's larger goal of "restor[ing] fairness to federal cocaine sentencing." Preamble, Fair Sentencing Act of 2010. As members of Congress repeatedly noted during deliberations over the FSA, the issue of fairness was punctuated

---

assuming it is compelled by the Savings Statute.

by the decidedly unbalanced impact of higher crack cocaine minimums on African-Americans and Latinos.

In *United States v. Douglas*, 2010 WL 4260221 (D. Me. October 27, 2010), Judge Hornsby distinguished post-sentence cases under the Savings Clause from that presented by the FSA with respect to pre-sentence cases, noting that:

> The explicit congressional grant of emergency guideline amendment authority and the mandate of "consistency" and "conforming" amendments, coupled with the express language of the Sentencing Reform Act of 1984 (that the Guidelines in effect on the day of sentencing control irrespective of when offense conduct occurred), unmistakenly demonstrate Congress' urgency and expectation of immediate change.

*Id.* at *5. As Judge Hornby explained: "I would find it gravely disquieting to apply hereafter a sentencing penalty that Congress has declared to be unfair." *Id.* at *6 n. 57. So, too, I.

Entered this 10th day of January, 2011.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge